POCAHONTAS TANNING COMPANY, Plaintiff, *v.* FIDELITY-PHENIX FIRE INSURANCE COMPANY OF NEW YORK, Defendant.

First Department, April 30, 1926.

Insurance — fire insurance — action on policy covering tannery — policy insured against direct loss — fire destroyed leach house and tanning fluid — tanning of leather then in vats was completed with inferior liquor — policy did not insure against loss caused by interruption of business — nothing to show that tanning of hides could not have awaited proper liquor — loss is not covered.

In an action on a fire insurance policy issued against direct loss by fire to a tannery company, but which specifically stated that it did not insure against loss arising from interruption of business, the insured cannot recover, where a fire destroyed the leach house and the tanning liquor therein contained, for damage to hides then in the vats which damage arose out of completing the tanning process by inferior liquor, since there is nothing to show that the completion of the tanning of the hides then in the vats could not have been delayed until proper liquor was procured.

If the hides then in the vats could have been held until the proper liquor was procured, the insured would not be entitled to recover, since the loss would be directly attributable to an interruption of business which was not covered in the policy.

DOWLING and MERRELL, JJ., dissent.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Davies, Auerbach & Cornell* [*Martin A. Schenck* of counsel; *Edward Cornell* and *Emily C. Holt* with him on the brief], for the plaintiff.

*Cardozo & Nathan* [*Edgar J. Nathan* of counsel; *W. Calvin Chesnut* with him on the brief], for the defendant.

FINCH, J. The question presented for decision is whether damage to the finished product of plaintiff's tannery, suffered in the process of tanning by the substitution of a tanning fluid in place of other fluid which was destroyed in connection with the destruction of an adjoining leach house by fire, is a loss by fire within the terms of a policy of insurance issued by the defendant

**436** Pocahontas Tanning Co. *v.* Fidelity-Phenix Fire Ins. Co.

First Department, April, 1926. [Vol. 216

to the plaintiff. The stipulated facts show that the defendant, prior to the fire involved in the submission, issued to the plaintiff its policy insuring: " Pocahontas Tanning Company, and legal representatives, to the extent of the actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality within a reasonable time after such loss or damage, without allowance for any increase cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair and without compensation for loss resulting from interruption of business or manufacture " for the term of one year from August 12, 1922, " against all direct loss and damage by fire and by removal from premises endangered by fire, except as herein provided " to an amount not exceeding $62,500 " to the following described property while located and contained as described herein or *pro rata* for five days at each proper place to which any of the property shall necessarily be removed for preservation from fire, but not elsewhere, to wit:

" On their tannery buildings situate at Durbin, Pocahontas County, West Virginia, known as ' Pocahontas Tannery,' including additions and projections, appurtenant buildings, dwellings, and brick, stone or concrete foundations, piers or other supports which are above the under surface of the lowest floor of basement or basements or, where there is no basement, which are above the surface of the ground, and on the contents thereof (excluding accounts, bills, currency, deeds, evidences of debt, money, notes or securities), including vats, and their covers, runways, stacks, bridges, platforms, passageways, hose houses, racks, fences and other yard fixtures, bark ground and unground, tanning, liquors, and all other materials and supplies used for the purpose of tanning and finishing leather; hides, skins and leather (including their tanning interest in stock belonging to others), and all by-products of tanning such as hair, grease and glue-stock; office furniture and fixtures and supplies, leaches and reservoirs, boilers, engines, furnaces and machinery, settings and foundations, heating, hoisting, lighting, electric, telephone, signalling, ventilating, time and fire extinguishing apparatus and parts of same, bark conveyors, shafting, belting, hangers, pulleys, heaters, mills, tanks, piping, pumps and all tools, fixtures, utensils, implements, apparatus, mill and machinery supplies that may properly belong within or in a building for any part of the process of tanning and finishing leather and the maintenance and repair of the within mentioned premises and machinery, in or on within described buildings, or on the premises,

excluding Bark Mill & Engine House, bark in piles, bark sheds and automobiles."

The plaintiff's tannery comprised, among other things, a leach house in which the tanning liquor for the tanning of hides was made; separated from this leach house were vats in which the hides were soaked in the process of tanning. The tanning liquor was pumped from the leach house to these vats containing the hides and was renewed from time to time by pumping back to the leach house, treating and returning to the vats.

On the 30th day of July, 1923, a fire occurred which destroyed the leach house and its contents, the tanning liquor and pumping machinery, causing a loss of $30,185.60. No question arises in regard to the amount of this damage, which has been paid by the insurance companies.

At the time of the fire no tanning liquor was being pumped from the leach house to the beam house or tan yard, and none of the tanning liquor and none of the hides in the beam house or tan yard was affected by fire or heat, or any agency used in extinguishing the fire.

At the time of the fire there were hides in process of tanning in various vats in the beam house and tan yard which were being treated in hemlock bark liquor manufactured from hemlock bark in the leach house. The destruction of the leach house prevented the plaintiff from continuing to make hemlock bark liquor and the plaintiff was unable to purchase or procure from others like quality of tanning liquor made from hemlock bark. In order to continue the tanning process upon the hides in vats at the time of the fire the plaintiff had to procure and use a substitute liquor made from ingredients other than hemlock bark. The result of completing the process of tanning of those hides which were in the vats at the time of the fire with the substituted tanning liquor, resulted in the value of the leather (that is, the hides when the process of tanning was completed) being less than would have been the value of the leather if they had been continued to be treated with tanning liquor of like quality as that supplied from the leach house, in the amount of $44,741.53.

The plaintiff has performed all conditions precedent on its part and has given proper notice of loss and filed proper proofs of loss.

The question between the parties is whether the difference in value of the hides was covered by the policy.

It is further stipulated by the 12th paragraph of the submission as follows: " The parties agree that the Court shall render such judgment as shall be proper on the above facts; if it is determined that the loss is covered by the defendant's policy, judgment shall

**438** Pocahontas Tanning Co. *v.* Fidelity-Phenix Fire Ins. Co.

First Department, April, 1926. [Vol. 216

be directed against the defendant in the amount of eighteen hundred and thirty-four and 87/100 ($1,834.87) dollars with interest from the 20th day of February, 1924, without costs; if it be determined that the loss is not covered by the policies, the defendant shall have judgment against the plaintiff dismissing the submission, without costs."

Under the foregoing facts the plaintiff has not shown that it is entitled to judgment. The plaintiff has the burden of proving that its loss was caused by the fire. (*Whitlatch* v. *Fidelity & Casualty Co.*, 149 N. Y. 45.) The plaintiff, however, has not shown that there has been any damage to the hides as a result of the fire. The hides were not affected by the fire or by any agency used in extinguishing the same. On the contrary, it appears that the damage was incurred by the continuation of the process of tanning by the use of other liquid which was not suitable for that purpose. The policy insured the plaintiff's buildings and their contents " against all direct loss and damage by fire." The policy expressly provided that there should be no compensation for loss resulting from interruption of business or manufacture. The plaintiff urges that the stipulated facts show that the hides in the vats would have deteriorated unless the tanning process was continued, and as it was impossible to obtain other than inferior tanning fluid, that, therefore, the fire caused the loss. If the submission fairly showed these facts a different situation entirely would have been disclosed. There is nothing in the stipulated facts to show that the hides could not have remained in the vats without deterioration until the proper quality of tanning fluid could have been obtained, and that all that would then have happened would have been an interruption of the business of tanning, against which the plaintiff was not insured. The plaintiff points to the following in the submission: " The fresh tanning liquor from the leach house was pumped, not continuously, but at intervals several times a day, through these wooden pipes to reserve tanks in the tan yard and from these tanks was supplied to the various vats. The proper completion of the tanning process required approximately 37,000 gallons of fresh tanning liquor from the leach house daily." But all that these facts show is the requirements for the proper *completion* of the tanning process. It does not show in any way that in order to prevent deterioration to the hides, it was necessary to complete the process of tanning before the first quality tanning liquor could have been obtained. The loss was, therefore, caused by voluntarily completing the tanning process with inferior tanning liquor instead of waiting for the proper tanning liquor. The loss was thus not caused by the

fire, but through an intervening act. This intervening act made the loss not causally connected with the fire and hence the defendant is not liable.

It follows that there should be judgment for the defendant dismissing the submission, without costs.

McAVOY and MARTIN, JJ., concur; DOWLING and MERRELL, JJ., dissent.

Judgment directed for defendant dismissing the submission, without costs. Settle order on notice.